IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORTH SIDE FOODS CORP., INC., )<br>Plaintiff, )<br>)<br>vs. )<br>)<br>BAG-PACK, INC., )<br>Defendant. ) | Civil Action No. 05-1612<br>Judge Conti<br>Magistrate Judge Mitchell |

REPORT AND RECOMMENDATION

I. Recommendation

It is respectfully recommended that the motion to strike or for partial dismissal submitted on behalf of Defendant (Docket No. 17) be denied.

I. Report

Plaintiff, North Side Foods Corp., brings this action against Defendant, Bag-Pack, Inc., alleging claims arising out of Defendant's supplying of certain plastic bags that were defective, rendering the product unusable and causing Plaintiff to incur expenses. Plaintiff alleges claims of breach of contract, breach of express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose and strict liability.

Presently before this Court for disposition is a motion to strike or for partial dismissal, submitted by Defendant. It seeks to remove from the case Plaintiff's request for punitive damages because punitive damages are not allowed as a matter of law in breach of contract claims. For the reasons that follow, the motion should be denied.

Facts

North Side Foods is engaged in the process of producing prepared meats, including various sausage products. It ships its prepared meats and sausages to distributors in plastic bags. Bag-Pack is a manufacturer of plastic bags and North Side purchased plastic bags for product shipment from Bag-Pack. (Compl. ¶¶ 6-9.)

In February 2005, North Side Foods purchased 30,400 17x21, 12-pound blue wicket bags from Bag-Pack to package and ship sausage crumbles to its customer Sunny Fresh Foods, Inc. Wicket bags contain very small half-moon air vent flaps which permit the crumbles to be packed more effectively. Sunny Fresh intended to use the sausage crumbles as an ingredient in a burrito egg blend for sale to McDonald's restaurants and it requested that North Side Foods ship the sausage crumbles in blue plastic bags.

On March 14, 2005, Sunny Fresh contacted North Side Foods to state that it had discovered that the crumbles were contaminated with blue plastic fragments from the bags, approximately one to six inches in diameter. Sunny Fresh determined that the fragments were large enough to remove from the sausage crumbles and added an additional step to its inspection process to eliminate them. North Side Foods agreed to reimburse Sunny Fresh for the additional inspection cost and immediately stopped using the Bag-Pack blue wicket bags. (Compl. ¶¶ 12-18, 20-26, 30-35.)

The next day, Sunny Fresh contacted North Side Foods again to report that it had discovered more blue plastic fragments in the sausage crumbles shipment. This time the fragments, approximately two millimeters in diameter, were too small to be removed from the product and by the time they were detected they had already contaminated Sunny Fresh's burrito

2

egg blend product.  The contaminated product could not be sold to McDonald's or any other customer.  North Side Foods contacted a manufacturing manager at Bag-Pack, who represented that Bag-Pack had had a difficult time manufacturing the blue wicket bags and that the bag-cutting dies for the two millimeter air vent holes only cut the plastic partially, creating hanging chads.  (Compl. ¶¶ 36-52.)

Plaintiff alleges that it reimbursed Sunny Fresh for the costs incurred from the blue plastic fragment contamination to the burrito egg blend product in the amount of $273,815.48; that it incurred $5,190.00 in costs associated with shipping back from Sunny Fresh the 210,672 pounds of contaminated sausage crumbles; that the value of the sausage crumbles product which was contaminated and remains unsold is approximately $116,000.00; that it has incurred approximately $1,920.00 in inspection costs; and that it will incur approximately $7,500.00 in disposal costs of the contaminated sausage crumbles.  (Compl. ¶¶ 63-69.)

Procedural History

Plaintiff filed this action on December 1, 2006.  Jurisdiction is based on diversity of citizenship, in that Plaintiff is a Delaware corporation with its principal place of business in Pennsylvania; Defendant is an Ohio corporation with its principal place of business in Ohio; and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.  (Compl. ¶¶ 1-3.)  The complaint alleges that Defendant's actions constitute breach of contract (Count I), breach of express warranty (Count II), breach of the implied warranty of merchantability (Count III) and breach of the implied warranty of fitness for a particular purpose (Count IV) and that Defendant is liable under a theory of strict liability (Count V).  Damages are not identified in each individual claim, but are listed in the "Wherefore" clause at the end of the complaint.

Included in the damages section is a request "that this Court award punitive damages to North Side Foods as a result of Bag-Pack's outrageous conduct." (Compl. at 14.)

On January 17, 2007, Defendant filed an answer to the complaint (Docket No. 16) and also a motion to strike or for partial dismissal. The motion argues that the request for punitive damages should be stricken from the complaint or, in the alternative, that a motion for partial dismissal of the punitive damages request should be granted on the grounds that punitive damages are not available for breach of contract actions.

Plaintiff argues that: 1) a motion to strike, rather than a motion for partial dismissal, is the appropriate vehicle to dismiss less than an entire claim or a complaint; 2) a motion to strike does not apply to this situation because the request for punitive damages is not redundant, immaterial, impertinent or scandalous; 3) this action is not solely a contract action and punitive damages are available in a strict liability action; and 4) it has a valid product liability claim that is not barred by the economic loss doctrine because it alleges damage to "other property"; and 5) even if Rule 12(b)(6) or Rule 12(f) applied, Plaintiff has made sufficient allegations to put Defendant on notice that it will seek to show that Defendant acted in an outrageous manner, so as to support the request for punitive damages.

<u>Which Rule Applies</u>

A motion to dismiss under Rule 12(b)(6) is based on the argument that the allegations of a claim "fail[] to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Rule 12(f) allows the court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "While courts possess considerable discretion in weighing Rule 12(f) motions, such motions are not favored

and will generally be denied unless the material bears no possible relation to the matter at issue and may result in prejudice to the moving party." Miller v. Group Voyagers, Inc., 912 F. Supp. 164, 168 (E.D. Pa. 1996) (citations omitted). See also Lakits v. York, 258 F. Supp. 2d 401, 409 (E.D. Pa. 2003).

On its face, Rule 12(f) appears to have no application to a request for punitive damages, in that it does not constitute "redundant, immaterial, impertinent, or scandalous matter." However, Plaintiff cites a case in which Judge Smith stated that "Rule 12(b)(6) is the appropriate procedural mechanism for dismissing an entire claim or complaint, as opposed to the individual allegations in support of it, as legally insufficient. To the extent plaintiffs wish to excise individual allegations, Rule 12(f) provides the appropriate vehicle for doing so." In re Westinghouse Sec. Litig., 1998 WL 119554, at *2 (W.D. Pa. Mar. 12, 1998) (citations omitted).

The Westinghouse case was a securities litigation in which the defendants sought dismissal of portions of individual counts of the complaint, not a request for punitive damages. "A request for punitive damages does not constitute a cause of action in an [sic] of itself. Rather, a request for punitive damages is merely incidental to a cause of action." Nix v. Temple University, 596 A.2d 1132, 1138 (Pa. Super. 1991). See also Barum v. Farugia, 606 F.2d 42, 46 (3d Cir. 1979) (citing Pennsylvania law).

A request for punitive damages does not constitute an "individual allegation" in support of any claim asserted in the complaint. Therefore, a Rule 12(b)(6) motion is the appropriate vehicle for seeking dismissal of a request for punitive damages. See Black v. Metso Paper USA, Inc., 2006 WL 3956466, at *7 (M.D. Pa. Aug. 3, 2006); In re Consolidated Coal Co., 228 F. Supp. 2d 764, 772 (N.D.W. Va. 2001).

Standard of Review

A motion under Rule 12(b)(6) must be viewed in the light most favorable to plaintiff and all well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). See also National Org. for Women, Inc. v. Scheidler, 510 U.S. 249 (1994). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Williams, 490 U.S. at 323; Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Defendant argues that is well-settled under the law of Pennsylvania that a party "could not recover punitive damages for an action solely sounding in breach of contract." DiGregorio v. Keystone Health Plan East, 840 A.2d 361, 370 (Pa. Super. 2003) (citations omitted). The court observed that such "punishment is inconsistent with traditional contract theories." Id.

> Whereas in contract actions, damages are awarded to compensate an injured party for the loss suffered due to the breach, the purpose of punitive damages is to punish outrageous and egregious conduct done in a reckless disregard of another's rights; it serves a deterrence as well as a punishment function.

Johnson v. Hyundai Motor America, 698 A.2d 631, 639 (Pa. Super. 1997) (citations omitted).

Similarly, under Ohio law (which might apply in this case), "punitive damages are generally not recoverable in an action for breach of contract." Digital & Analog Design Corp. v. N. Supply Co., 540 N.E.2d 1358, 1367 (Ohio 1989) (citation omitted). An exception exists where "the breach of contract is accompanied by a connected, but independent tort involving fraud, malice or oppression." Goldfarb v. Robb Report, Inc., 655 N.E.2d 211, 215 (Ohio 1995) (citations omitted). In order to meet this exception, a plaintiff must prove: 1) a breach of

contract; 2) a connected tort independent of that breach; and 3) that the tortious conduct was fraudulent, malicious, or oppressive in nature." Mabry-Wright v. Zlotnik, 844 N.E.2d 858, 862 (Ohio 2005). Defendant contends that Plaintiff could not meet this exception here.

Plaintiff responds that this is not "solely" a contract action, in that Count V alleges a claim for strict liability. This claim sounds in tort and, under appropriate circumstances, punitive damages can be obtained. The Pennsylvania Supreme Court has not foreclosed the awarding of punitive damages in a strict liability action if the facts warrant such an award. See Phillips v. Cricket Lighters, 883 A.2d 439, 445-47 (Pa. 2005) (recognizing that punitive damages were possible, but holding that the plaintiff had not demonstrated "outrageous conduct," the standard for applying them). See also Hutchison ex rel. Hutchison v. Luddy, 870 A.2d 766 (Pa. 2005) (there is no general proscription in the law against pursuing punitive damages in a case of negligent supervision, if the facts so warrant). The same is true in Ohio, even if the standard for applying punitive damages is phrased somewhat differently. See Calmes v. Goodyear Tire & Rubber Co., 575 N.E.2d 416 (Ohio 1991) (punitive damages are available if the plaintiff demonstrates "actual malice").

Plaintiff also notes that Defendant has not moved to strike or dismiss its strict liability count under the economic loss doctrine, which "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001) (citation omitted). This is because a "manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." King v. Hilton-Davis, 855 F.2d 1047, 1050 (3d Cir. 1988) (citation omitted). Plaintiff observes that the doctrine would

not apply in this case because it has alleged that the defective product (the blue wicket bags) caused harm to other property (specifically, Plaintiff's sausage crumbles and Sunny Fresh's burrito egg blend product).

At this early stage of the proceedings, the Court cannot determine whether Defendant's conduct constituted such outrageous behavior as to make an award of punitive damages appropriate.  See Riba v. Staar Surgical, 2003 WL 21961395 (E.D. Pa. June 25, 2003) (refusing to dismiss request for punitive damages relating to claims for negligence, product liability and breach of warranties).  Therefore, Defendant's motion for partial dismissal of Plaintiff's request for punitive damages should be denied.

For these reasons, it is recommended that the motion to strike or for partial dismissal submitted on behalf of Defendant (Docket No. 17) be denied.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

                                        Respectfully submitted,

                                        s/Robert C. Mitchell
                                        ROBERT C. MITCHELL
                                        United States Magistrate Judge

Dated: February 26, 2007